We will begin with case number 23-20475, and that's United States v. Davis and Tiras et al. Mr. O'Kane. My name is Rusty O'Kane, and along with my co-counsel, we represent the appellants, the gravity parties. Under the criminal forfeiture statute 21 U.S.C. 853N, Gravity Capital did assert a valid, timely interest to the underlying Tombaugh property that was adjudicated by the district court. Capital did or funding did? Capital did or funding did? Yes, Your Honor. If you look at the face of the petition, Gravity Capital did. And the reason I say that is for two reasons. Under Federal Rule of Civil Procedure 10 and the Doctrine of Misnomer, the pleading exhibits attached to Gravity's petition contradict the misnomer of the pleading allegation that was put in the document. There's no question the document itself does say gravity funding. However… Which is a different corporate entity, right? It is a different corporate entity. There's no claim that that refers to Gravity Capital? Correct. Correct. But the exhibits that are attached to the petition do provide unquestionably under and pursuant to the forfeiture statute, Gravity Capital asserted its right, title, and interest in the Tombaugh property, as well as the time and circumstances of when the interest was acquired. This court has held in the United States v. St. Luke's case, 2004-355-F3-370, that where exhibits contradict contrary allegations, the court can accept those exhibits as the pleading which were attached in this case. Also, 21 U.S.C. 853-0 provides plain language of the statute says that it shall be liberally construed to effectuate its remedial purposes. Here, the third parties that asserted an interest in the Tombaugh property, let's not forget they are victims of Mr. Davis' crimes and are seeking to pursue their interests in the property. And here, Gravity Capital was unquestionably the party intended to pursue those interests. And everybody knew it. So what happened here? Is it just a drafting glitch? That's it. It was a drafting error, and the declaration of Joseph Callister, as well as the testimony of Dave Knudson, who took the stand at the ancillary proceeding, testified. When he signed and he looked, it was just an error in drafting, and it said Gravity Funding, but all along, the party in interest was in fact Gravity Capital. Where would you draw the line between a misnomer and a mistake that's not curable? This court already has, and in the Valencia case, Allstate-Texas-Lloyds, 976 F. 3rd, 593, 5th Circuit, 2020, this court stated there are circumstances in which a misidentification may be overlooked. For example, when there are, quote, two separate legal but related entities that use a similar trade name and the correct entity had notice of the suit and was not misled or disadvantaged by the mistake. So here, I don't think we have to draw a distinction because we know that the circumstances of the statute, the requirements of the statute, were met. You have a party asserting its interest, attaching documents to the petition that allow everybody in the case, the appellees, the district court, knew that Gravity Capital was asserting its interest. So here, where you have a situation that it was very clearly not disadvantageous to the appellees, where there's no prejudice, and more importantly, where Gravity Capital is the party that appeared at the evidentiary hearing without objection. Gravity Capital took the stand, testified, and Mr. Knudson took the stand and explained the error, saying this was a drafting mistake. And so what you have here is it's an incident where the party simply just misnamed itself. Was there a motion to fix the pleading, to fix the caption? In the post-hearing brief, Your Honor, yes. The post-hearing brief is where it was the first time it was raised by any party, and as soon as it was brought to the attention of Gravity Capital, Gravity Capital filed its post-hearing brief where it specifically requested, to the extent it needed to amend, it requested leave to do so. And so we contend that no real amendment was required because all parties understood who the proper party was. You have Rule 10 that already provides for the correct party. And once Gravity Capital appeared at the hearing, and I think this is a very dispositive fact, Gravity Capital appeared at the hearing, and Gravity Capital took the stand. Gravity Capital proved up its petition, and pursuant to the statute, the criminal forfeiture statute provides for a party to prove up the facts and allegations in the petition. All of that was done without objection. When was it first raised that the entity might be a different one, although similarly named, it might be a different one? It sounds like you're arguing that there was a de facto instant or amendment simply because the words came out at a hearing. But was there any, aside from a written motion that you mentioned in response to Judge Ho's question, was there any mention on the record in an attempt to clarify? Yes. Mr. Knudsen testified at the hearing and specifically said, to the extent that our petition said Gravity Funding, that was a drafting error. It should have been Gravity Capital. And he clarified it at the hearing. And at that time, neither of the appellees raised any objection to Gravity Capital's participation in the hearing. And I think there's another distinct and important fact. In April, on or about April 21st, 2023, and you can find this in the clerk's record at page 1098 to 1108, Gravity Capital signed the underlying sale contract for the Tomball property, and that was prior to the evidentiary hearing. And that's what triggered the funds that got deposited into the registry of the court for everyone's benefit. And so when you have a party, Gravity Capital signed the contract with authority and consent of the appellees. Gravity Capital signed or proceeded with the sale of the property for everyone's benefit. The court, the district court, blessed the sale, and everyone knew that Gravity Capital was the party that was pursuing its interest. And so where you have, and the doctrine of misnomer provides for that, that there's a good case out of the Southern District of Texas, the Dalton case, which essentially says that where a party misnames itself but the correct parties are involved, and the site for the Dalton case is 4F Sup 3rd, 859, and the PIN site is 865, 2014. And it stands for the proposition that when a party misnames itself but the correct parties are involved, the court acquires jurisdiction over the non-named party if it was clear that no one was misled. And that's important because here, no one was misled. In fact, all the parties participated knowing Gravity Capital intended to pursue and was in fact pursuing its interests. You also have the issue, so on its face, I think the petition is sufficient. You have Rule 10, you have the doctrine of misnomer, you have the consent and no objection of the parties. All of the cases cited by the appellees deal with situations where the United States filed early motions to dismiss. And this court stated in footnote 4 of the Lamin case that notwithstanding the mandatory nature of the 30-day requirement in 853N, at least one case, this court cited a Seventh Circuit case wherein the claimant was given another opportunity to file a petition because the failure to file was due to excusable neglect. And the point there was that it was because nobody was prejudiced, nobody was surprised. It wasn't an attempt to amend facts, change the nature of the proceeding. Here, had there been simply an opportunity for Gravity Capital to change the name from Gravity Funding to Gravity Capital, it would not have changed the nature of the proceeding. What was the excusable neglect in this case? The drafting error, just quite candidly. It was a closely assumed, a closely analogous name, Gravity Funding, Gravity Capital. It was an oversight in drafting. Let me rephrase the excusable neglect in making the correction. It seems like that was originally filed, Gravity Funding timely filed its petition on July the 14th, 2022. And the motion for new trial where there's the first mention in writing is February 16th of 2024. Now, you had answered my question earlier that there was a hearing, which I don't have the exact date on it, but it would have been around June 6th, 2023. That's about 11 months. So my question about excusable neglect rather relates to a delay in making the clarification or the correction. Yes, Your Honor. I would respectfully clarify that actually on July 22nd, 2023, Gravity Capital is in its post-hearing brief. It did raise in writing the issue that you've just addressed. So it wasn't 11 months. It was two weeks after the evidentiary hearing, and you can find that in the record on page 655. After the hearing, but the original error was made in the original filing by your client, right? So that would have been July 14th of 2022. Understood. It was not raised by anybody prior to that date. So the first time Gravity ever realized its mistake, it corrected it or sought to correct it within two weeks. And I guess, frankly, as soon as it was brought up at the hearing, Mr. Knudsen took the stand and testified to that. So I would say that within perhaps moments of learning about it, they immediately took steps to clarify the issue. So I would say that, yes, the drafting error happened as early as July 2022, but nobody raised that issue. Nobody, I'll say, caught it, if you will, until after. And I think it's important to look at how this case proceeded. Is that a factor for us considering relief for you as the length of time between the error and the correction? I don't think so, no. I think that my perspective on it and Gravity's perspective on it is here, if you look at the face of the pleading, we'll call it a pleading, the petition, you have enough in the record on the face of it to show that Gravity Capital was the party asserting its interest. And I think if you do think that you have to look at the timing, I think you have to look at the totality of circumstances that Gravity participated in the process, as demonstrated most starkly by its signature on the sale contract as Gravity Capital. Gravity Capital never would have had reason to sign that contract, releasing its lien, unless everybody knew that Gravity Capital was the party pursuing its interest. And so I think if you were to look at the totality of circumstances, it actually weighs in favor of Gravity Capital's position, because you have 14 months or so of, or 11 months, where Gravity Capital was very clearly pursuing its interests. None of the parties were harmed. Nobody was misled. And so it allows for either on the face of the pleading or from what I think you're raising is an equitable issue of you waited 11 months. In reality, that's because everybody proceeded with the, very candidly, the knowledge that Gravity Capital was the party pursuing its interests. And so— Do we agree with the district court on that issue? Is that fatal to the rest of your claims? I'm sorry? Do we agree with the district court on that issue? Is that fatal to the remainder of your claims? Well, to the extent that this court affirmed that Gravity Capital did not have an interest, or did not file its petition, and that Gravity Funding did not have an issue, that Gravity Funding never had an interest, I think, yes, it would present a problem for, now it doesn't address the issue that Tiris's claim is also invalid, and this court should, the district court erred in finding that Mr. Tiris continued to maintain an interest. Mr. Tiris's interest, for example, should have been wiped out when the court found forfeiture in favor of the United States. The statute provides very clearly that the United States must have clear title. Mr. Tiris does not satisfy 853-6—excuse me, 853-N-6-A. That's getting to a merits issue, right? It is. That's right. You do have to have a petitioner. I'm not saying you are or are not a live petitioner, but you have to have a live petitioner in order to see up the merits issues. And I believe that Gravity Capital was a live petitioner based on the pleading exhibits, but also based on trial by consent. To the extent there's any doubt, Gravity Capital appeared at that July 6th hearing, the evidentiary, and its president, and I think this is important to distinguish from the Lamid case where, in this case, the same person who signed the petition, Dave Knudsen, is the same person who took the stand at the evidentiary hearing to testify. The Lamid case involved a different party, a mother and son, and there was a futility argument where the son would never have been able to assert a claim on behalf of his mother based on a power of attorney. Here, Mr. Knudsen is the same person, and he clarified on the record. And so, again, at the commencement of that forfeiture hearing, Gravity Capital's counsel appeared. Gravity Capital took the stand, and no one objected. This, under the Shanbaum case, 5th Circuit, 1994, 10F3305, which involved a tax lien issue, whether an issue has been tried by consent depends on whether the parties recognized the unpleaded issue entered the case. Unless the court has any questions, I see that I'm out of time. Respectfully, we would ask this court to reverse the district court's ruling as to Gravity Capital and remand for a determination of those issues on the merits. Thank you. You've reserved five minutes. Yes, Your Honor.  Good afternoon, and may it please the court. Tyler Foster for the United States. To the government, this appeal comes down to one singular issue, which was addressed by the government in the briefing, and that is neither Gravity Capital nor Gravity Funding properly complied with 21 U.S.C. 853 N.3's strict requirements. Now, 853 N.3 requires a party who has an interest in a property to file a petition signed under penalty of perjury, asserting facts, setting forth their interest. Here we have a petition filed by Gravity Funding, who admittedly has no interest in the Tombaugh property, and we have Gravity Capital, the entity that possibly has an interest in the Tombaugh property, failing to file a petition at all. Do you agree this was obviously just a drafting glitch, or do you think there's something else going on here? Your Honor, I think that the problem here is that we have two entirely distinct entities, and I think that— Do you agree that this obviously was just sort of a drafting glitch? I'm not saying the glitch is something we can ignore or should ignore or should not ignore, but I'm just trying to understand what's going on here. Do you agree it's a drafting glitch? The government would agree that it appears to be a drafting glitch. It does not appear that there was bad faith necessarily on the part of Gravity Capital. Are you all theorizing any sorts of confusion or prejudice on your part, or is this— I assume it was obvious what they were really seeking. Your Honor, it became obvious at the July 6 hearing. Prior to— But even before that, just based on the pleadings themselves, it wasn't obvious that it was Gravity Capital that was asserting its rights, even though it was obviously not pled that way? Your Honor— Again, I'm not saying that you therefore should win or lose. I'm just trying to nail down what the issues are. I think that there was confusion regarding which entity had an interest in the Tombaugh property. The government sent direct notice to Gravity Capital. However, Gravity Funding filed the petition and attached documents. Those documents were for both Gravity Capital and Gravity Funding. And certainly there are circumstances under which a company can assert the rights for another company. It might not have been clear whether Gravity Capital was doing business as Gravity Funding or whether Gravity Capital had assigned its interest in the property to Gravity Funding. And so it didn't become clear until the July 6 hearing when the president and CEO of Gravity Capital and Gravity Funding took the stand and testified that there had been a mistake made, that it became clear that there was, in fact, a mistake and the wrong entity had filed the petition. Were the parties prejudiced by the—I'm sorry, go ahead. Should the district court have allowed—given them the opportunity to amend? Your Honor, the government believes that amendment outside of the 30-day window prescribed by 853 N.2 is not allowable. There's no language in 21 U.S.C. 853 or in Federal Rule of Criminal Procedure 32.2 that allows for amendment outside of that 30-day window, which this court recognized in the unpublished but persuasive opinion of Lammed and the Eleventh Circuit recently addressed in the Sanchez case, which was appealed to the Supreme Court, and cert was denied in that case. Counsel, opposing counsel mentioned that there was no prejudice to anyone as a result of the error. What prejudice was there that we should be aware of? Your Honor, I don't believe that prejudice is necessary to rule in the government's favor and to affirm the district court in this case. This court and other circuit courts have construed 853 N.3 strictly, and they have dismissed petitions, even filed by pro se petitioners, where there was some sort of deficiency in the petition that was filed. Here we don't have a pro se plaintiff, a pro se petitioner. Here we have a complicated, sophisticated corporate entity who was represented by counsel, who even after they were put on notice of the deficiency in the pleading, failed to take a timely opportunity to amend until February of 2024. The government disagrees with Gravity Capital and Gravity Funding to the extent that they assert that they requested leave to amend in the post-hearing briefing. The site, record site 24-20039 at page 655, is their post-hearing briefing. In that post-hearing briefing, they did not request leave to amend the petition or to file a petition out of time. In that brief, Gravity Funding requested the district court's permission to proceed as Gravity Capital, which the government does not believe was an actual request to amend, the operative document in this case being the petition. And I think it's important to... It was a glitch followed by another glitch, is what you're saying. Your Honor, the mistakes compound upon themselves in this case. And I think it's important to recognize the purpose of the ancillary hearing in the federal criminal forfeiture context. The district court decides that a property is subject to forfeiture, and then the ancillary proceeding is to quiet title. It's to make sure that all of the entities that have an interest in the property, basically their interests are recognized into quiet title with respect to that particular property. So it is vital that the proper party comes forward and asserts their interest in the property, so that way the record can be clear for purposes of quieting title. You mentioned that we have an unpublished decision on the issue of whether or not they should amend, I believe. Are there other circuits that have dealt with whether or not you can amend after the 853N deadline? Yes, Your Honor. I believe it was addressed in the government's brief, and I know that Tiris recently filed a Rule 28J letter to the court that cited additional authority. And as I previously mentioned, the 11th Circuit in the Sanchez case, which was cited by Gravity Funding and Gravity Capital in their briefs, also addressed that issue. And the 11th Circuit concluded that there was no opportunity to amend allowed under 853 or Rule 32.2. Your Honor, I see that my time has expired. We respectfully request this court affirm the district court. Thank you. Thank you. Mr. Kroc. May it please the Court. Kenneth Kroc on behalf of the Appellees Alan Tiris and Alan Tiris, PC. The appellant, Gravity, has couched this as a misnomer case or an amendment case. This is a failure of proof case. 853N2 tells us that we have to have a petition filed by a party seeking an interest. Gravity Funding filed that petition. And N3 says it has to be signed under penalty of perjury. In the record at 152, Mr. Knudsen, in a declaration, three times says, I'm the president of Gravity Funding, the foregoing claim to the property is by Gravity Funding, and the paragraphs, I verify the paragraphs in the petition on behalf of Gravity Funding. Based on that petition, they were allowed to go to the hearing. At the hearing, because I asked the question, Mr. Knudsen admitted that Gravity Funding didn't have an interest. He admitted that Gravity Funding was a separate entity than Gravity Capital and instead said that Gravity Capital was asserting the interest. At that time, there's no petition filed by Gravity Capital. There's no reason to object. They have not filed a petition. By the way, that was also at the end of this hearing. Now, I thought there might be two things that might come out of Mr. Knudsen's mouth when I asked the question. One, Gravity Funding is a DBA of Gravity Capital. That would probably solve our problem. Or Gravity Funding had been assigned the interest by Gravity Capital. That might solve the problem. Neither one of those things came out of Mr. Knudsen's mouth. He admitted that they were two different entities. At that moment, they've had their opportunity to put their case on, and they failed in their proof. The reason that they got to the hearing was based on their petition. I would also note to the court that the cases that – a number of the cases that we've looked at in this deal with motions to dismiss. So maybe the government or Congress could have filed a motion to dismiss, but based on the possibility that there were other facts that could come out in this case, we allowed to go to the hearing and ask the questions at the hearing to confirm that those other facts didn't exist. Now, there's a number of different cases that Your Honor would ask about. We have cited a number of cases in our 28J supplemental. But what I'd like to point out is this court has noted that this filing deadline is mandatory, and they noted that in the Sharma case. They've noticed that in the Stone case. They've done that in the Lamed case that we've talked about. The reason that I talk about this as a failure to proof case is because the reason for this criminal statute, the reason that these cases look at these rules being mandatory is to avoid false claims or games and ship or people being able to assert different claims against the forfeited property. In this case, what you would have if you allowed this to occur here is you'd have a situation where somebody could come in, file a petition, and take a shot at it. And when they cannot prove it at the hearing, they would then turn around and say, oh, let me try again. Let me try a different way. Let me contradict my prior sworn testimony. Are you suggesting any gamesmanship or prejudice in this case? I am not making that suggestion. All I'm looking at is the importance of formalistic rules is to avoid that. That's the importance of this in the criminal forfeiture proceeding is to make sure that we don't have that. But how would a ruling here, which you're admitting is not a gamesmanship fact pattern, how would a ruling for the other side lead to the problems that you're ‑‑ I'm open to this theory. I'm just kind of curious if you could play this out. Right. Well, and what I would say is that ‑‑ Here it doesn't seem pretty obvious that this was just a drafting problem of failure of proofreading or whatnot. Well, I think that ‑‑ What's the gamesmanship fact pattern? I'm sorry. Please, please. Well, at the hearing, it became ‑‑ that was what Mr. Nutten said was that it was an error. Right. That was clearly what he said. And you don't dispute that. You're not saying he's lying. No, I'm not saying he's lying. My point is that if we create a situation where people can file where it doesn't matter if you sign it under perjury. It doesn't matter whether or not you sign something because we can just change it later and assert another interest or assert another claim, we create that exception. And I'm not ‑‑ and I'm saying that the court should not create any exceptions to that rule. And that's the way that the Lamin case and the Stoney ‑‑ Well, it strikes me there's two separate questions. One is do we want to create exception for good faith, non‑prejudicial drafting glitches? And another which is ‑‑ another problem is creating exceptions that will lead to gamesmanship. Right. How is it that creating the first exception will create the second problem? That's what I'm not getting. And my point is that allowing any exception to this rule where you're going to directly contradict your prior testimony would create that type of exception. I'm sorry. What's the prior testimony that's being contradicted here? His sworn declaration. When he swears that it's gravity funding. Oh, I see. You're talking about the original plating. Yes. And that's what I was getting. You file a petition. You swear to it. We have the rule. 853N3 says you have to do that. And then you turn around and you go to court. And if you can't prove that, you can try to make some other argument. I guess what I'm thinking is, you know, when you look at statutory interpretation, for example, there are doctrines of the Scrivener's error doctrine, right, where courts on occasion will say, look, it's obvious what Congress meant. It was just a Scrivener's error. We can forgive that. And that does not ‑‑ recognizing that, we can debate whether we should have that doctrine or not. But having that doctrine doesn't lead to all kinds of legislative mischief with judges rewriting laws at their whim, does it? I agree it doesn't. But what I would say is that in this particular context, the courts have been very careful not to create those exceptions because of those concerns. And so in this situation, one of the things that I think that one of the justices brought up earlier was a situation of excusable neglect. And the footnote in the Lame case. We don't have a motion by gravity capital before the district court to ever say, I've missed the deadline. Can you extend the deadline? There's a rule for that, 6B, under the Federal Rules of Civil Procedure. Now, I will note that the Criminal Procedure Code, 32.2, says that it does allow for certain procedural rules, civil procedural rules, to apply. But it doesn't say that all of them do. In fact, the advisory comments are fairly specific about which ones are applying. Motions to dismiss, motions for summary judgment, discovery, appeal from a final order. And the advisory notes specifically say, we're not going to make all of the rules apply. But let's assume they do. Let's assume that Federal Rule of Civil Procedure 6B applies. Then where is the motion by gravity capital to say, I missed the deadline. Judge, here's my excusable neglect. And the reason is you can't show the excusable neglect here. You really can't. Because gravity capital actually got the notice. And then gravity funding filed the petition. And that is not, and I would submit that on the case law, that is not going to qualify as an excusable neglect situation. So, I would ask, I would say that that particular issue was not raised. It was not raised in a motion. And likewise, on this issue of motion for leave to amend, it wasn't raised at the hearing for the court to consider at that time. Otherwise, we would have those arguments. It was raised for the first time, really, in a motion where gravity asked for relief in the post, the motion for new trial after the final order of forfeiture. And so, it was only at that time that they actually asked for that type of relief. Of course, they could have done it at any other point in time and then brought that issue up as an amendment. The case law that, now, I would also note that gravity has sort of asserted its argument that this statute needs to be liberally construed. But the statute actually says it's liberally construed to effectuate its remedial purposes. I can't read out the second part of that language, to effectuate its remedial purposes. The statute is designed to let the government recover property that was obtained by criminal activity. And so, that's the reason, that's what that statute says, liberally construed to effectuate its remedial purposes. You'll see that they cite a number of cases in their reply, the Lavin case and the Libretti case. And they make arguments that those courts are recognizing that the statute's purpose is to protect innocent parties. I would ask the court to read carefully those cases, the Lavin case and the Libretti case. That's not what those cases say. The part that they're quoting from those cases are their quotes of the appellant's arguments in that case. The court's not saying that's the purpose of this statute. The purpose of this statute is a criminal forfeiture proceeding. It's different than a civil case. It has its unique rules. It has its unique circumstances. And so, I would reference back that it's not just one case that we're dealing with here. We have the Lamin case. We have the Alvarez case, which is a published opinion by this court. We have the Sharma case. We have the Marion case. And then, we also have the Stone case, which is an unpublished opinion by this court. And I'd like to, I forgot which justice raised this issue, but at the very end of that case, the court says, disputes about whether the government would be prejudiced by a late-filed petition are irrelevant. The rule is the rule, and that's the way that this court has consistently applied 853N and its requirement for a timely petition and a petition sworn. Counsel, if we agree with Gravity Capital and we grant the relief they're requesting on this first issue, how would your client overcome In re Goff with regard to his status as an unsecured creditor? Okay. So, I think they have to get through two issues, respectively. The first issue is this issue about Gravity Capital not filing a petition. Correct. The second issue. Assuming we get past that and we agree with your opponent. Yes, and the second issue is the second issue that they raised that was in their brief, which is that the district court actually found that they did not prove their interest in under 853N6B, which is the bonafide. And we cited a number of cases and references to the record about the fact that there was a failure of proof to prove that they were a bonafide purchaser and that they were without reasonable cause to know that this property was subject to forfeiture. So, I'll answer your question, but you have to get past Issue 1 and Issue 2 before you even get to Issue 3. On Issue 3, on In re Goff, I would point out a couple things to the court. One, In re Goff and the Shirley case that's cited in the reply are both bankruptcy cases. There's a specific statute in a bankruptcy case called 541C, I think, talking about Spendthrift Trust. I would assert that the In re Goff opinion is related to that bankruptcy analysis. And I would also focus on one of the cases that the Gravity cited, which was the Lecoff case, in which the court said, well, there's different considerations in a bankruptcy context than there are in a criminal forfeiture matter. And they've actually cited Lecoff and Lazar in Andrew's case, and I would ask the court to actually look at those, because the courts go through an analysis about what's relevant in a forfeiture case versus what's relevant in a bankruptcy case. The other point on In re Goff is that this court not only found that there was a Spendthrift provision issue or Spendthrift Trust, it also went as far as saying it was a sham trust. In this situation, it's pretty much beyond dispute that Mr. Davis created this trust, did the PPP loan fraud, then acquired the property in the trust. So it was created for an illegal purpose to create, to basically commit a fraud on the government and to purchase this property. The statute in the Texas Property Code talks about trust cannot be for an illegal purpose. We're not going to allow that to occur. So those two points, and also there is a subsequent case in the Texas courts talking about the invalidity of a trust, invalidity of a trust that is, that violates the Spendthrift provisions. So I would say that all three of those would be things that would pass. I'm sorry. Yeah. Why don't you finish up? Yeah. I would say that all three of those would be reasons why the in-rate Goff provision case does not apply.  Thank you. I have a bad angle here.  Let's give opposing counsel one extra minute. Mr. O'Kane, you've reserved five minutes. We'll give you six. In this case, the petition was signed under oath. It was signed by Dave Knudsen, and he is the same person who testified at the hearing and clarified this drafting error. And to the extent that it, just to answer the court's question, this was because, just candidly, the attorney who had been working on the case worked on another gravity funding matter and used a similar pleading, and that's how the name creeped in. It was immediately corrected upon discovering the issue. Mr. Knudsen took the stand and testified, and what the appellees are glossing over is that they consented. They appeared at the hearing, and what I think is interesting is this concept of lying in wait. This court has consistently applied and stated that 853N provides for or that the civil procedure rules, at least with respect to pleading, the 12B standard applies to these petitions. The appellees had a 12B motion available to them. If they thought that we were, that gravity was doing something or they wanted to investigate the nature of the claim or that they saw that there was some confusion between funding and capital, they could have filed a motion to dismiss, and they didn't, and the reason they didn't is because they weren't confused, because it was always clear from the beginning that the entity that was noticed by the government was Gravity Capital, the party that, and that's important. There was no assignment, nor would there have been, because the government had sent the notice to Gravity Capital. But surely you're not saying that a party that fails to file a 12B-6 then forfeits legal arguments at the summary judgment stage. Not at all, not at all. However – In other words, I grant you that the other side could have flagged this earlier. What I'm not clear on is why that excuses the obligations on your side. Because it goes further, because they also appeared at the hearing and didn't raise or reserve any rights and say, hey, wait a second, we have a question about this, we're confused, we don't know what the proper entity is here, we raise that as an objection and an issue. They didn't do that. They appeared at the hearing, and critically, prior to that hearing, months before, they participated with Gravity Capital to ensure that the Tomball property was sold, and Gravity Capital is the entity that signed that sale contract. And so here, the issue of trial by consent is a very real one. But I also want to address Federal Rule of Civil Procedure 15. And this court has held, in the Osborne case in 1998, that Rule 15 is an appropriate vehicle to cure misnomer and is meant to allow an amendment changing the name of a party to relate back to the original complaint. Here, the rule applies to amendments changing a plaintiff. That's the SMS case out of the Fifth Circuit as well. Is that a forfeiture issue? No, not specifically, but because this court has applied civil procedure rules to forfeiture proceedings, I think it's analogous and persuasive here where you have a situation where Rule 10 applies to say, we didn't need to amend, but even if you didn't accept that position, you have Rule 15, which applies, which allows the curing of a misnomer. But to be clear, none of these things were done by your client, right? Well, I think the amendment was effectuated upon showing up at the hearing as Gravity Capital, and Gravity Funding didn't show up. I think also you have the post-hearing brief. You also have the motion for reconsideration where all of these issues were raised in an attempt to, quote, unquote, amend if necessary. Your argument is not that these motions were made. Your argument is that these motions were unnecessary. Correct. Due to lack of surprise, lack of prejudice, et cetera. Exactly, and the misnomer doctrine. But even if that were not the case and a motion were required, I think a sufficient motion was presented at the post-hearing briefing stage or motion for reconsideration stage. So we attempted multiple times to, out of an abundance of caution, alert the district court to the issue and give the district court an opportunity to correct the issue or to allow us to correct the issue in front of the district court. And given that all of that occurred. What do you mean by that, that you gave the district court ample opportunity? With respect to error preservation, we notified the district court of the issue, and we said in both our post-hearing brief and in the motion for reconsideration, we alerted the district court to this was a misnomer, this was an accidental drafting error. But did you seek to file a new petition on behalf of the proper party? No, because our position is that the proper party was always the party pursuing its interests. By virtue of the pleading attachments, pleading exhibits, the parties that have showed up at the evidentiary hearing, the evidence that was admitted at the hearing, all of which I don't believe a formal motion to amend was required, a motion for leave to amend was required. Your point is everybody knew what was going on. Exactly. That's exactly right. And so, and then very briefly with respect to, and I think it's also worth noting that the other circuits have allowed an amendment in the criminal forfeiture, under the criminal forfeiture proceeding statute, the Swartz case in the Second Circuit, and the Fiorando case out of the Seventh Circuit, both of which allow amendments to go outside the 30-day mandatory requirement under 853N. Remind me, did any of those cases involve the addition of entirely new parties? No, no. It seems to me that's qualitatively different. It may not be distinguishable, but. Respectfully, I would suggest. You can call this an amendment of petition. It's really joinder, right, or it's really filing a new petition altogether. It's not. I believe that because under the misnomer doctrine, the issue here would be related back to the original petition because you're just clear. You're not really adding a new party. You're not changing the party. What you're really doing. Relating that could work. The problem to me is that you didn't seek that. There was no Rule 15 or its analogous type motion. True, but that's because it was, well, I would argue that it was in the motion for reconsideration. I see that I'm out of time. Respectfully, we would ask this court to reverse and remand for a determination of those issues on bona fide lender under 853N6. Thank you. The case is submitted. Parties are excused. We'll now hear the next case.